**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| AMANDA BREY WALKER, § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. |
| § | Jury |
| § | |
| PLANT PROCESS FABRICATORS, § | |
| LLC, § | |
| *Defendant*. § | |

**COMPLAINT**

Plaintiff Amanda Brey Walker sues Defendant Plant Process Fabricators, LLC ("PPF") for violating federal law in **four** different ways.

**Nature of the Case**

1. This is an employment case. It consists of four claims, all of which are for retaliation in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a)("Title VII").

**Parties**

2. Plaintiff Amanda Brey Walker, f/k/a Amanda Brey, is an individual. She resided in Hopkins County, Texas during all events giving rise to this action.

   A. Walker was an "employee" of PPF, as that term is defined in 42 U.S.C. § 2000e(f), starting from her date of hire there, and ending on her last day of her employment there.

3. Defendant Plant Process Fabricators, LLC ("PPF") is a limited liability company formed in Delaware and currently in good standing. It may be served with process by serving its **registered agent**, **Stephen Kennedy,** at the following location – **2525 South Shore Boulevard, Suite 400, League City, Texas 77573,** or wherever else he may be found.

   A. PPF was an "employer" of Walker, as that term is defined in 42 U.S.C. §

2000e(b), starting on the first day when it put Walker on its payroll, and ending on the last day when it removed Walker from its payroll.

  B. PPF had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2018.

  C. PPF had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2019.

  D. PPF had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2020.

  E. PPF has had fifteen or more individuals on its payroll for each calendar week up to the date it received this lawsuit.

## Jurisdiction

4. This Court has subject matter jurisdiction over this action because Walker's claims present federal questions. *See* 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1343(a)(4) ("civil rights").

5. This Court has *in personam* jurisdiction over PPF because PPF conducts business in Texas, Walker's claims all arose in Texas, and PPF is amenable to service by this Court.

## Venue

6. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Walker's four claims occurred here. *See* 28 U.S.C. § 1391(b)(2).

## Material Facts

7. PPF is a fabrication company for building gas plants, in a modular capacity, and shipping those items to clients' locations for assembly completion.

  A. In calendar year 2018, PPF had more than 14 and fewer than 101 employees in each of 20 or more calendar weeks.

        B.      In calendar year 2018, PPF had more than 100 and fewer than 201 employees in each of 20 or more calendar weeks.

        C.      In calendar year 2018, PPF had more than 200 and fewer than 501 employees in each of 20 or more calendar weeks.

        D.      In calendar year 2018, PPF had more than 500 employees in each of 20 or more calendar weeks.

        E.      In calendar year 2019, PPF had more than 14 and fewer than 101 employees in each of 20 or more calendar weeks.

        F.      In calendar year 2019, PPF had more than 100 and fewer than 201 employees in each of 20 or more calendar weeks.

        G.      In calendar year 2019, PPF had more than 200 and fewer than 501 employees in each of 20 or more calendar weeks.

        H.      In calendar year 2019, PPF had more than 500 employees in each of 20 or more calendar weeks.

        I.      In calendar year 2020, PPF had more than 14 and fewer than 101 employees in each of 20 or more calendar weeks.

        J.      In calendar year 2020, PPF had more than 100 and fewer than 201 employees in each of 20 or more calendar weeks.

        K.      In calendar year 2020, PPF had more than 200 and fewer than 501 employees in each of 20 or more calendar weeks.

        L.      In calendar year 2020, PPF had more than 500 employees in each of 20 or more calendar weeks

        8.      Walker's first day working for PPF was in January 2017.

9. Walker's first day working for PPF was on January 17, 2017.

10. Sometime during the first quarter of 2018, PPF produced, or caused to be produced, an IRS Form W-2, where on that form the name of the "[e]mployee" was "Amanda Brey."

11. Sometime during the first quarter of 2019, PPF produced, or caused to be produced, an IRS Form W-2, where on that form the name of the "[e]mployee" was "Amanda Brey."

12. Sometime during the first quarter of 2020, PPF produced, or caused to be produced, an IRS Form W-2, where on that form the name of the "[e]mployee" was "Amanda Brey."

13. Sometime during the first quarter of 2021, PPF produced, or caused to be produced, an IRS Form W-2, where on that form the name of the "[e]mployee" was "Amanda Brey."

14. Sometime during the first quarter of 2021, PPF produced, or caused to be produced, an IRS Form W-2, where on that form the name of the "[e]mployee" was "Amanda Brey Walker."

15. PPF assigned Walker the following job title – "Engineering Administrator."

16. PPF assigned Walker to its facility located at 41 HC Pioneer Parkway in Sulphur Springs, Hopkins County, Texas 75482 (hereinafter "Sulphur Springs Facility").

17. Walker reported to Wintters during the following portion of her employment with PPF – from mid-May 2017 to October 2019.

    A. During this period, Wintters's job title at PPF was first "Quality Control Manager;" then, PPF changed Wintters's title to "Operations Manager."

18. Walker received her annual review for Year 2018 from Wintters.

19. Walker received her annual review for Year 2019 from Wintters.

20. Wintters assigned certain job tasks to Walker.

21. In Year 2018, Wintters approved a modified work schedule for Walker.

22. During the first half of October 2019, Walker transmitted a letter to PPF's Human

Resource Department at the Sulphur Springs Facility.

23. On October 9, 2019, Walker transmitted a letter to PPF's Human Resource Department at the Sulphur Springs Facility.

24. During the first half of October 2019, Walker hand delivered a letter to PPF's Human Resource Department at the Sulphur Springs Facility.

25. On October 9, 2019, Walker hand delivered a letter to PPF's Human Resource Department at the Sulphur Springs Facility.

26. During the first half of October 2019, Walker reported to PPF's Human Resource Department at the Sulphur Springs Facility that Wintters had sexually harassed her.

27. On October 9, 2019, Walker reported to PPF's Human Resource Department at the Sulphur Springs Facility that Wintters had sexually harassed her.

28. PPF had Walker spend October 16 and 17, 2019 at its office in League City, Texas.

29. PPF had Walker spend October 16 and 17, 2019 at its office in League City, during which time Walker met with Mr. Josh Burnett.

    A. During October 16 and/or 17, 2019, Burnett worked in Human Resources.

    B. During October 16 and/or 17, 2019, Burnett and Walker discussed the matters Walker had raised in her letter of October 9, 2019 and hand delivered to Human Resources at the Sulphur Springs Facility.

30. PPF had Walker spend October 16 and 17, 2019 at its office in League City, during which time Walker met with Ms. Roseanne Kaysen.

    A. During October 16 and/or 17, 2019, Kaysen was one of the owners of PPF.

    B. During October 16 and/or 17, 2019, Kaysen and Walker discussed the matters Walker had raised in her letter of October 9, 2019 and hand delivered to Human Resources

**Complaint**      **Page 5**

at the Sulphur Springs Facility.

31. PPF had Walker spend October 16 and 17, 2019 at its office in League City, during which time Walker met with Mr. Joe Borg.

    A. During October 16 and/or 17, 2019, Borg was one of the owners of PPF.

    B. During October 16 and/or 17, 2019, Borg was VP of Engineering.

    C. During October 16 and/or 17, 2019, Borg and Walker discussed the matters Walker had raised in her letter of October 9, 2019 and hand delivered to Human Resources at the Sulphur Springs Facility.

    D. During October 16 and/or 17, 2019, Borg told Walker, "*Ýou are not getting anything out of this*."

32. PPF no longer employs Wintters.

33. Wintters's employment with PPF ended in Year 2019.

34. Wintters's employment with PPF ended in mid-October 2019.

35. Wintters's employment with PPF ended on October 18, 2019.

36. PPF discharged Wintters.

37. PPF asked Wintters to resign.

38. At the end of Wintters's employment, PPF provided to Wintters "severance pay," *i.e.,* dismissal or separation income paid on termination of employment in addition to the employee's usual earnings from the employer at the time of termination.

39. Following his employment with PPF, Wintters applied to the Texas Workforce Commission ("TWC") for unemployment benefits.

40. Following his employment with PPF, Wintters applied to the TWC for unemployment benefits, which PPF did not oppose.

41. On October 21, 2019, Borg was at the Sulphur Springs Facility.

42. On October 21, 2019, Borg was at the Sulphur Springs Facility, during which time Borg told Walker, "*You are not getting anything out of this.*"

43. In a face-to-face conversation at the Sulphur Springs Facility on December 2, 2019, Borg informed Walker that another PPF employee named Ms. Rose Shelton needed to learn how to do Walker's job.

44. In a face-to-face conversation at the Sulphur Springs Facility on December 2, 2019, Borg informed Walker that another PPF employee named Ms. Rose Shelton needed to learn how to do Walker's job because, said Borg, "*someday you are going to disappear into the sunset.*"

    A. Borg said this to Walker in the presence of Mr. Adam Cline, Operations Manager.

45. On/about December 2, 2019, Walker saw two other PPF employees, Shelton and Ms. Ashley Holliman, working on the same documentation as her.

    A. The name of the project made the basis of this documentation is the "2303 Red Rock" project.

46. On February 17, 2020, Cline had Walker come to his office.

47. On February 17, 2020, Cline had Walker come to his office, at which time he gave Walker her yearly performance review for Year 2019.

48. On February 17, 2020, Walker learned that, effective that same day, PPF had approved her for an increase of three dollars in her hourly rate of pay.

    A. *See WAGE AUTHORIZATION FORM,* attached hereto as **Exhibit A**.

49. Despite the events referenced in the preceding paragraph, PPF never increased Walker's hourly rate of pay at any time from February 17, 2020 to the end of her employment.

50. Despite the document attached hereto as **Exhibit A**, PPF never increased Walker's hourly rate of pay at any time from February 2020 to the end of her employment.

51. During the week of May 17-23, 2020, the following employees were all sharing the same office at the Sulphur Springs Facility– Messrs. Josh ("Red") Terrell, Colton Wilks, and Canon Albert. (This office shall hereinafter be called the "Foreman's Office.")

52. During the week of May 17-23, 2020, Walker overheard a conversation taking place in the Foreman's Office by/among multiple foremen and managers about Walker being "*termed once her 300-day statute of limitations is up*."

53. Walker filed Charge of Discrimination Number 450-2020-05327 with the U.S. Equal Employment Opportunity Commission ("EEOC").

　　A.　Walker provided PPF, by and through Ms. Donna Albert in Human Resources, a copy of this Charge.

　　B.　Walker tendered a copy of this Charge by hand-delivering it to Albert.

　　C.　Walker tendered a copy of this Charge by hand-delivering it to Albert on June 1, 2020.

54. In May 2020, PPF had Walker working a modified schedule.

　　A.　Walker had been working a modified schedule since Year 2018.

　　B.　PPF had Walker working a modified schedule so as to accommodate Walker's childcare needs.

55. On June 3, 2020, Albert transmitted an email to more than twenty PPF employees, including Walker.

56. **Exhibit B** is a true and correct copy of the email referenced in preceding paragraph.

57. On June 18, 2020, Walker's direct supervisor was Mr. Bobby Jimmerson.

58. On June 18, 2020, Jimmerson informed Walker that PPF would no longer allow Walker to work a modified schedule.

    A. Jimmerson did not offer any business-related reason for this change.

59. On June 22, 2020, Walker signed a second Charge of Discrimination with EEOC.

    A. The filing of this Charge was by email. EEOC received this Charge of Discrimination on the morning of June 23, 2020.

    B. The filing of this Charge was also by certified mail, return receipt requested. EEOC received this Charge of Discrimination on June 26, 2020.

60. PPF discharged Walker.

61. On July 13, 2020, PPF informed Walker that she was discharged.

    A. Before July 13, 2020, no one in PPF management had ever given Walker a written warning or write-up.

62. On July 13, 2020, Cline informed Walker that PPF had decided to discharge her.

    A. When this happened, Cline and Walker were located in Albert's office.

    B. After Cline had so informed Walker, Albert handed Walker a one-page document titled *Employee Termination Form.*

    C. After Cline had so informed Walker, Albert handed Walker a one-page document titled *Employee Termination Form,* and she demanded that Walker sign the "Employee Signature" portion of that form.

    D. After Cline had so informed Walker, Albert handed Walker a one-page document titled *Employee Termination Form,* and she demanded that Walker sign the "Employee Signature" portion of that form, but Walker refused, whereupon Albert wrote the following on the "Employee Signature" portion of the form – "*Refused to sign.*"

63. **Exhibit C** is a true and correct copy of the *Employee Termination Form* that PPF, by and through Albert, delivered by hand to Walker on July 13, 2020.

64. On July 14, 2020, Walker signed a third Charge of Discrimination with EEOC.

    A. The filing of this Charge was by email. EEOC received this Charge of Discrimination on the afternoon of July 14, 2020.

    B. The filing of this Charge was also by certified mail, return receipt requested. EEOC received this Charge of Discrimination on July 17, 2020.

65. EEOC combined the second and third charges and gave both the same charge number, which is 450-2020-05470.

66. On December 17, 2020, EEOC's District Director issued a document titled "*Notice of Right to Sue (Issued on Request)*" in connection with Charge of Discrimination Number 450-2020-05327. A true and correct copy of this document is attached as **Exhibit D**.

    A. PPF received a copy of this document in the mail.

67. On December 17, 2020, EEOC's District Director issued a document titled "*Notice of Right to Sue (Issued on Request)*" in connection with Charge of Discrimination Number 450-2020-05470. A true and correct copy of this document is attached as **Exhibit E**.

    A. PPF received a copy of this document in the mail.

68. Due to PPF's conduct, including the foregoing, Walker has suffered economic losses and mental anguish. She will likely continue to suffer such losses in the future.

### COUNT ONE:
### Retaliation in Violation of Section 704(a) of Title VII;
### Adverse Action – Hostile Work Environment

69. Walker re-alleges and incorporates by reference all allegations set forth in paragraphs 7 through 68.

70. Section 704(a), 42 U.S.C. § 2000e-3(a), provides: "*It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [s]he has **opposed** any practice made an unlawful employment practice by this title [42 USCS 2000e-2000e-17][.]*" (Emphasis added).

71. PPF violated Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a), as follows:

   A. Walker engaged in legally protected opposition when on or about October 9, 2019, she reported to PPF's Human Resources Department at the Sulphur Springs Facility that Wintters had sexually harassed her.

   B. Less than one month after Walker's legally protected opposition set forth in subpart "A" of this paragraph, PPF management began manifesting a hostile attitude towards her. Examples include:

   (i) Borg telling Walker on October 16 and/or 17, 2019, while the two were in League City, Texas, "*You are not getting anything out of this*."

   (ii) Borg telling Walker on October 21, 2019, while the two were at the Sulphur Springs Facility, that Walker is "*not getting anything out of this*."

   (iii) Borg telling Walker on December 2, 2019 that Shelton needed to learn how to do Walker's job because, said Borg, "*someday you are going to disappear into the sunset*."

   (iv) Reducing Walker's workload as evidenced by Shelton and Holliman working on the "2303 Red Rock" project in addition to Walker.

   (v) Walker overhearing a conversation coming out of the Foreman's Office by/among multiple foremen and managers during the week of May 17-23, 2020 about Walker getting "**termed once her 300-day statute of limitations is up**."

    (vi)  Walker incorporates into this Count One all adverse actions used to support Counts Two, Three and Four *infra.*

    C.  A causal link exists between subparts A and B of this paragraph, *e.g.*, timing and knowledge by PPF.

  72.  Walker has satisfied the following conditions precedent to the filing of Count One – *first*, Walker timely filed Charge No. 450-2020-05327 with EEOC; *second*, EEOC issued to Walker a "*Notice of Right to Sue (Issued on Request)*"; and *third,* Walker, by and through her attorney, has filed this action within 90 days of Walker's or her counsel's receipt of same.

  73.  Walker seeks all relief available to her under Section 704(a) of Title VII. This includes but is not limited to the following: (i) compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses; (ii) punitive damages, given the fact that PPF engaged in discriminatory practices with malice or with reckless indifference to Walker's federally-protected rights; (iii) all permitted equitable relief; (iv) all interest allowed by law, *e.g.,* pre-judgment and post-judgment; (v) a reasonable attorney's fee to the undersigned counsel as part of the costs; (vi) reimbursement of expert fees as part of the undersigned counsel's attorney's fee; and, (vii) all other costs allowed by law.

## COUNT TWO:
### Retaliation in Violation of Section 704(a) of Title VII;
### Adverse Action – PPF Never Pays Walker a Raise It Had Previously Approved, in Writing

  74.  Walker re-alleges and incorporates by reference all allegations set forth in paragraphs 7 through 68.

  75.  Section 704(a), 42 U.S.C. § 2000e-3(a), provides: "*It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because*

*[s]he has **opposed** any practice made an unlawful employment practice by this title [42 USCS 2000e-2000e-17][.]*" (Emphasis added).

76. PPF violated Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a), as follows:

A. Walker engaged in legally protected opposition when on or about October 9, 2019, she reported to PPF's Human Resources Department in Sulphur Springs that Wintters had sexually harassed her.

B. On February 17, 2020, *i.e.,* less than five months after Walker's opposition set forth in subpart "A" of this paragraph, PPF management approved Walker for a pay raise; yet, PPF management never bothered to start paying Walker that new, higher rate.

C. A causal link exists between subparts A and B of this paragraph, *e.g.*, timing and knowledge by PPF.

77. Walker has satisfied the following conditions precedent to the filing of Count Two – *first*, Walker timely filed Charge No. 450-2020-05327 with EEOC; *second*, EEOC issued to Walker a "*Notice of Right to Sue (Issued on Request)*"; and *third,* Walker, by and through her attorney, has filed this action within 90 days of Walker's or her counsel's receipt of same.

78. Walker seeks all relief available to her under Section 704(a) of Title VII. This includes but is not limited to the following: (i) all wages and employment benefits, starting on the effective date when PPF approved the pay raise, and ending on the date when a jury renders a verdict ("back pay"); (ii) compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses; (iii) punitive damages, given the fact that PPF engaged in discriminatory practices with malice or with reckless indifference to Walker's federally-protected rights; (iv) all permitted equitable relief; (v) all interest allowed by law, *e.g.,* pre-judgment and post-judgment;

(vi) a reasonable attorney's fee to the undersigned counsel as part of the costs; (vii) reimbursement of expert fees as part of the undersigned counsel's attorney's fee; and, (viii) all other costs allowed by law.

## COUNT THREE:
### Retaliation in Violation of Section 704(a) of Title VII;
### Adverse Action – Change in Hours

79. Walker re-alleges and incorporates by reference all allegations set forth in paragraphs 7 through 68.

80. Section 704(a), 42 U.S.C. § 2000e-3(a), provides: *"It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [s]he has **opposed** any practice made an unlawful employment practice by this title [42 USCS 2000e-2000e-17], or because [s]he has **made a charge** ... under this title title [42 USCS 2000e-2000e-17]."* (Emphasis added).

81. PPF violated Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a), as follows:

　　A.　Walker engaged in legally protected opposition when on or about October 9, 2019, she reported to PPF's Human Resources Department in Sulphur Springs that Wintters had sexually harassed her. Also, Walker engaged in legally protected participation when she filed Charge Number 450-2020-05327 and provided a copy of same to PPF on June 1, 2020.

　　B.　Following the two events set forth in subpart "A" of this paragraph, PPF pulled Walker into her direct supervisor's office and told Walker that PPF will no longer allow Walker to keep the modifications that PPF had put in place for about two years earlier.

　　C.　A causal link exists between subparts A and B of this paragraph, *e.g.*, timing and knowledge by PPF.

82. Walker has satisfied the following conditions precedent to the filing of Count Three

– *first*, Walker timely filed Charge No. 450-2020-05470 with EEOC; *second*, EEOC issued to Walker a "*Notice of Right to Sue (Issued on Request)*"; and *third,* Walker, by and through her attorney, has filed this action within 90 days of Walker's or her counsel's receipt of same.

83. Walker seeks all relief available to her under Section 704(a) of Title VII. This includes but is not limited to the following: (i) compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses; (ii) punitive damages, given the fact that PPF engaged in discriminatory practices with malice or with reckless indifference to Walker's federally-protected rights; (iii) all permitted equitable relief; (iv) all interest allowed by law, *e.g.,* pre-judgment and post-judgment; (v) a reasonable attorney's fee to the undersigned counsel as part of the costs; (vi) reimbursement of expert fees as part of the undersigned counsel's attorney's fee; and, (vii) all other costs allowed by law.

## COUNT FOUR:
### Retaliation in Violation of Section 704(a) of Title VII; Adverse Action – Discharge

84. Walker re-alleges and incorporates by reference all allegations set forth in paragraphs 7 through 68.

85. Section 704(a), 42 U.S.C. § 2000e-3(a), provides: "*It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [s]he has **opposed** any practice made an unlawful employment practice by this title [42 USCS 2000e-2000e-17], or because [s]he has **made a charge** ... under this title title [42 USCS 2000e-2000e-17]."* (Emphasis added).

86. PPF violated Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a), as follows:

    A. Walker engaged in legally protected opposition when on or about October

9, 2019, she reported to PPF's Human Resources Department in Sulphur Springs that Wintters had sexually harassed her. Also, Walker engaged in legally protected participation when she filed Charge Number 450-2020-05327 and provided a copy of same to PPF on June 1, 2020.

        B.        Following the two events set forth in subpart "A" of this paragraph, PPF discharged Walker.

        C.        A causal link exists between subparts A and B of this paragraph, *e.g.*, timing and knowledge by PPF.

87.        Walker has satisfied the following conditions precedent to the filing of Count Four – *first*, Walker timely filed Charge No. 450-2020-05470 with EEOC; *second*, EEOC issued to Walker a "*Notice of Right to Sue (Issued on Request)*"; and *third,* Walker, by and through her attorney, has filed this action within 90 days of Walker's or her counsel's receipt of same.

88.        Walker seeks all relief available to her under Section 704(a) of Title VII. This includes but is not limited to the following: (i) all wages and employment benefits, starting on the effective date of Walker's discharge, and ending on the date when a jury renders a verdict ("back pay"); (ii) reinstatement, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Walker will be made whole ("front pay"); (iii) compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses; (iv) punitive damages, given the fact that PPF engaged in discriminatory practices with malice or with reckless indifference to Walker's federally-protected rights; (v) all permitted equitable relief; (vi) all interest allowed by law, *e.g.,* pre-judgment and post-judgment; (vii) a reasonable attorney's fee to the undersigned counsel as part of the costs; (viii) reimbursement of expert fees as part of the

undersigned counsel's attorney's fee; and, (ix) all other costs allowed by law.

## Jury Demand

89. Walker demands a jury on all issues so triable. *See* FED. R. CIV. P. 38.

## Request for Relief

WHEREFORE, Plaintiff Amanda Brey Walker ("Walker") asks that Defendant Plant Process Fabricators, LLC ("PPF") appear and answer, and that on trial of this action Walker have final judgment against PPF as set forth hereinabove, and for all such other and further relief to which Walker is justly entitled.

Dated: March 7, 2021

Respectfully submitted,

/s/
By: _____
**Wade A. Forsman**
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX 75483-0918
903.689.4144 Telephone-East Texas
972.499.4004 Telephone–Dallas/Fort Worth
903.689.7001 Facsimile
**wade@forsmanlaw.com**

**Attorney for Plaintiff Amanda Brey Walker**